BURNS *v.* FORD, ADMX.

5-769                                                    283 S. W. 2d 866

Opinion delivered November 21, 1955.

*Wayne Foster,* for appellant.

*Gordon Sullivan, John Bailey* and *Harry C. Robinson,* for appellee.

J. SEABORN HOLT, Associate Justice.   Appellee as administratrix in succession, on October 4, 1954, obtained a judgment for $3,500 in a tort action against appellant, Catherine Burns, and caused execution to issue.   A levy was made on Lots 5 and 6, Block 21, Brack's Addition to the City of Little Rock, which property appellant scheduled as exempt claiming it to be her homestead.   A traverse was entered by appellee and on a hearing the trial court, March 16, 1955, denied appellant's schedule on the

ground that at the time she purchased the property levied on, she was not the head of a family and that the homestead that she had held in other property,—Lot 6, Block 28, Brack's Addition to Little Rock,—she had voluntarily sold and had been abandoned by her. From the judgment is this appeal.

For reversal appellant relies on two points: "(1) Under Arkansas law one possessing a homestead may sell the same and acquire a valid homestead in another tract with the proceeds thereof, provided the sale of the original homestead is not accompanied by circumstances constituting abandonment. (2) There was no evidence before the court in this cause upon which the court could predicate a finding that the sale of appellant's original homestead was accompanied by circumstances constituting an abandonment of same."

These points will be considered together. The material facts appear not to be in dispute and are to the following effect. Catherine Burns, acquired a homestead in Lot 6, Block 28, Brack's Addition to the City of Little Rock in 1914, which property is not involved in this action, and continued to live on said property until about August 9, 1943, when she voluntarily sold said property. On September 27, 1943, appellant purchased Lots 5, 6, 7 and 8, Block 21, Brack's Addition to the City of Little Rock and constructed a residence on the property, which she has occupied for several years. At the time appellant purchased this property, which is the property involved here, she was divorced from her husband (said divorce having been granted in 1930) and both of her children were of age, married and lived separate and apart from her.

We hold that the finding of the trial court was correct in the circumstances. At the time appellant sold Lot 6 in Block 28 above, she was unmarried, her children were of age, married and had moved away. She was then not the head of a family. The property involved here and levied on was acquired by her September 27, 1943, when she was neither married nor head of a family,

and after she had voluntarily abandoned her homestead. The principles of law announced in the case of *Beeson* v. *Byars,* 187 Ark. 966, 63 S. W. 2d 540, control here. In that case the facts were that: "The land in question had been for many years the homestead of John Beeson, but his son had moved away and his wife had died, and for some years John Beeson had lived alone on the land. It is insisted—and correctly so—that John Beeson's homestead right was not lost by the removal of his son from the homestead and the death of Mrs. Beeson. . . .

"The land ceased to be the homestead of John Beeson on November 19, 1929, at which time he sold and conveyed it to D. C. Cathey. Notes given by Cathey for the purchase money were not paid, and in January, 1931, Cathey reconveyed the land to John Beeson. The testimony established the fact very clearly that, when Beeson sold the land to Cathey, he surrendered possession thereof and removed therefrom, and went to the home of D. C. Cathey about 2½ miles away, in fact he had removed from the farm upon the death of his wife and after living with D. C. and Jack Cathey for something over two years he returned to live with Arthur Clements on the land in suit. . . .

"While, as we have said, John Beeson did not lose his right of homestead because he had been left without family, he did lose his homestead right when he sold and surrendered possession thereof. *Wooten* v. *Farmers' & Merchants' Bank,* 158 Ark. 179, 249 S. W. 569; *Gray* v. *Bank of Hartford,* 137 Ark. 232, 208 S. W. 302.

"Having abandoned the homestead, that right was not reacquired when Beeson returned to the land to live in the home of his tenant. To reimpress the homestead right upon the land it was essential that Beeson be then a married man or the head of a family. Section 3, article 9, Constitution.

"In other words, while Beeson might have retained his homestead right, even after he had ceased to be a married man or the head of a family, yet, when he aban-

doned his homestead right by the sale thereof and the removal therefrom, he could not thereafter, without being a married man or the head of a family, reacquire that right." See also *Stone* v. *Bowling,* 191 Ark. 671, 87 S. W. 2d 49.

Affirmed.

Mr. Justice ROBINSON not participating.